UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>RODNEY ROLLNESS,<br><br>Defendant. | Case No. CR06-041RSL<br><br>ORDER DENYING DEFENDANT'S MOTION FOR COMPASSIONATE RELEASE |

This matter comes before the Court on defendant's motion for compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A) (Dkt. # 1066). Having considered the motion and the record contained herein,[1] the Court finds as follows:

### I.  BACKGROUND

Defendant is a 60-year-old inmate currently incarcerated at the U.S. Penitentiary in Lompoc, California ("USP Lompoc"). Dkts. # 1066 at 4, 6, # 1083 at 2, # 1085 at 3. On June 11, 2007, defendant was convicted after a jury trial of multiple offenses, including, inter alia, participation in a Racketeer Influenced and Corrupt Organization ("RICO") in violation of 18 U.S.C. § 1962(c), RICO conspiracy in violation of 18 U.S.C. § 1962(d), and murder in violation of the Violent Crime in Aid of Racketeering statute, 18 U.S.C. § 1959(a) ("VICAR murder").

---

[1] The Court finds compelling reasons justify sealing the government's Exhibit A (Dkt. # 1087) and defendant's Exhibit B (Dkt. # 1094) as they contain defendant's sensitive medical information. The parties' respective motions to seal (Dkts. # 1086, # 1093) are accordingly GRANTED. The government's motion for leave to file an over-length brief (Dkt. # 1084) is also GRANTED.

ORDER DENYING DEFENDANT'S MOTION
FOR COMPASSIONATE RELEASE - 1

Dkts. # 761, # 772. On October 18, 2007, defendant appeared before the Court for sentencing for these offenses. Dkts. # 913, # 914. The Court sentenced defendant to life imprisonment and five years of supervised release. Id. He now moves for compassionate release.

## II.   LEGAL FRAMEWORK

The compassionate release statute provides narrow grounds for defendants in "extraordinary and compelling" circumstances to be released from prison early. See 18 U.S.C. § 3582(c). The First Step Act of 2018 amended the procedural requirements governing compassionate release. See id. Prior to the First Step Act's passage, only the Director of the BOP could bring motions for compassionate release. The Director rarely filed such motions. See, e.g., United States v. Brown, 411 F. Supp. 3d 446, 448 (S.D. Iowa 2019). Congress amended the statute to allow defendants to directly petition district courts for compassionate release. As amended, 18 U.S.C. § 3582(c)(1)(A) states in relevant part,

> (c) Modification of an imposed term of imprisonment.—The court may not modify a term of imprisonment once it has been imposed except that—
>
> > (1) in any case—
> >
> > > (A) the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that—
> > >
> > > > (i) extraordinary and compelling reasons warrant such a reduction;  . . .
> > > >
> > > > (ii)  . . .
> > >
> > > and that such a reduction is consistent with the applicable policy statements issued by the Sentencing Commission[.]

ORDER DENYING DEFENDANT'S MOTION
FOR COMPASSIONATE RELEASE - 2

Prior to passing the First Step Act, Congress directed the Sentencing Commission to promulgate a policy statement defining "extraordinary and compelling reasons" in the compassionate release context. <u>See</u> 28 U.S.C. § 994(t). Section 994(t) provides,

> The Commission, in promulgating general policy statements regarding the sentencing modification provisions in [18 U.S.C. § 3582(c)(1)(A)], shall describe what should be considered extraordinary and compelling reasons for sentence reduction, including the criteria to be applied and a list of specific examples. Rehabilitation of the defendant alone shall not be considered an extraordinary and compelling reason.

The Sentencing Commission implemented this directive from Congress with a policy statement—U.S.S.G. § 1B1.13. In relevant part, the policy statement provides,

> **Reduction in Term of Imprisonment Under 18 U.S.C. § 3582(c)(1)(A) (Policy Statement)**
>
> Upon motion of the Director of the Bureau of Prisons under 18 U.S.C. § 3582(c)(1)(A), the court may reduce a term of imprisonment (and may impose a term of supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment) if, after considering the factors set forth in 18 U.S.C. § 3553(a), to the extent they are applicable, the court determines that—
>
> (1)(A) Extraordinary and compelling reasons warrant the reduction;
> . . .
>
> (2) The defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g); and
>
> (3) The reduction is consistent with this policy statement.
>
> **Commentary**
>
> **Application Notes:**
>
> 1. **Extraordinary and Compelling Reasons.**—Provided the defendant meets the requirements of subdivision (2), extraordinary and compelling reasons exist under any of the circumstances set forth below:
>
>    (A) **Medical Condition of the Defendant**—
>
>    (i)   The defendant is suffering from a terminal illness (i.e., a serious and advanced illness with an end of life trajectory). A specific prognosis of life expectancy

      (i.e., a probability of death within a specific time period) is not required. Examples include metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, and advanced dementia.

  (ii) The defendant is—

    (I) suffering from a serious physical or medical condition,

    (II) suffering from a serious functional or cognitive impairment, or

    (III) experiencing deteriorating physical or mental health because of the aging process,

  that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.

(B) **Age of the Defendant.**—The defendant (i) is at least 65 years old; (ii) is experiencing a serious deterioration in physical or mental health because of the aging process; and (iii) has served at least 10 years or 75 percent of his or her term of imprisonment, whichever is less.

(C) **Family Circumstances.**—

  (i) The death or incapacitation of the caregiver of the defendant's minor child or minor children.

  (ii) The incapacitation of the defendant's spouse or registered partner when the defendant would be the only available caregiver for the spouse or registered partner.

(D) **Other Reasons.**—As determined by the Director of the Bureau of Prisons, there exists in the defendant's case an extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C).

2. **Foreseeability of Extraordinary and Compelling Reasons.**—For purposes of this policy statement, an extraordinary and compelling reason need not have been unforeseen at the time of sentencing in order to warrant a reduction in the term of

ORDER DENYING DEFENDANT'S MOTION
FOR COMPASSIONATE RELEASE - 4

> imprisonment. Therefore, the fact that an extraordinary and compelling reason reasonably could have been known or anticipated by the sentencing court does not preclude consideration for a reduction under this policy statement.
>
> 3. **Rehabilitation of the Defendant.**—Pursuant to 28 U.S.C. § 994(t), rehabilitation of the defendant is not, by itself, an extraordinary and compelling reason for purposes of this policy statement.
>
> 4. **Motion by the Director of the Bureau of Prisons.**—A reduction under this policy statement may be granted only upon motion by the Director of the Bureau of Prisons pursuant to 18 U.S.C. § 3582(c)(1)(A). The Commission encourages the Director of the Bureau of Prisons to file such a motion if the defendant meets any of the circumstances set forth in Application Note 1. The court is in a unique position to determine whether the circumstances warrant a reduction (and, if so, the amount of reduction), after considering the factors set forth in 18 U.S.C. § 3553(a) and the criteria set forth in this policy statement, such as the defendant's medical condition, the defendant's family circumstances, and whether the defendant is a danger to the safety of any other person or to the community.
>
> This policy statement shall not be construed to confer upon the defendant any right not otherwise recognized in law[.]

U.S.S.G. § 1B1.13. The Ninth Circuit has held that U.S.S.G. § 1B1.13 "is not an 'applicable policy statement' for 18 U.S.C. § 3582(c)(1)(A) motions filed by a defendant." United States v. Aruda, 993 F.3d 797, 802 (9th Cir. 2021). The Court may consider U.S.S.G. § 1B1.13 in exercising its discretion, but the policy statement is not binding. Id.; see United States v. Van Cleave, Nos. CR03-247-RSL, CR04-125-RSL, 2020 WL 2800769, at *3–5 (W.D. Wash. May 29, 2020) (referring to the guidance of U.S.S.G. § 1B1.13 as "persuasive, but not binding").

### III.   DEFENDANT'S CIRCUMSTANCES

**A.   Exhaustion Requirement**

A prisoner must establish exhaustion if the government timely raises the issue. United States v. Keller, 2 F.4th 1278, 1283 (9th Cir. 2021); see also 18 U.S.C. § 3582(c)(1)(A). The government contends that defendant's motion and supplemental brief fail to demonstrate that he

ORDER DENYING DEFENDANT'S MOTION
FOR COMPASSIONATE RELEASE - 5

has satisfied the exhaustion requirement, at least to the extent his current claim for relief is based on diabetes. Dkt. # 1085 at 9. Defendant alleges that he submitted a request for compassionate release to the Warden on November 27, 2020. Dkt. # 1066 at 4. Defendant's counsel's declaration indicates the request was made on November 20, 2020. Dkt. # 1083-1 at 3, ¶ 2. On December 14, 2020, the Warden denied the request after reviewing defendant's documentation, central file, and medical records. Dkt. # 1083-2. The government takes issue with the fact that defendant's medical records do not reflect a diabetes diagnosis until March 2021, such that defendant's request could not have included this diagnosis as a basis for relief in his request to the Warden. Dkt. # 1085 at 9. On September 1, 2021, defendant submitted a request to the Warden to reconsider defendant's motion for compassionate release and explicitly referenced his diabetes diagnosis. Dkt. # 1092 at 3. Assuming, *arguendo*, that defendant's current claim for relief, including his diabetes-based reasoning, has been exhausted, the Court nevertheless denies defendant's motion for the reasons explained below.

**B.      "Extraordinary and Compelling" Circumstances**

Defendant's supplemental brief supporting his motion for compassionate release based release on the following arguments:[2] (1) that defendant is at "exceptional risk" of complications or death if he contracts COVID-19 during his incarceration,[3] (2) that defendant has additional

---

[2] Defendant's pro se motion also argued for release based on his "actual innocence" and new case law. Dkt. # 1066 at 10. A motion that attacks a petitioner's underlying conviction is an attack on the merits of the case, and is more appropriate for a 28 U.S.C § 2255 motion, not a compassionate release motion, which concerns the appropriate term of imprisonment for a lawful conviction. As for the alleged new case law, defendant cited none. Id. Defendant's arguments are thus unavailing.

[3] To the extent defendant asserts that general conditions of confinement at USP Lompoc constitute extraordinary and compelling circumstances, Dkt. # 1083 at 2–4, the Court rejects defendant's reasoning because it is not sufficiently individualized. See, e.g., United States v. Bolden, No. 2:13-CR-00201-RSM, 2020 WL 4286820, at *7 (W.D. Wash. July 27, 2020) ("[G]eneral conditions that affect inmates indiscriminately throughout the prison are insufficient to support an individual defendant's claim for compassionate release."), appeal dismissed, No. 20-30168, 2020 WL 6580183 (9th Cir. Aug. 26, 2020); United States v. Butov, No. CR16-226RSM, 2020 WL 5910063, at *5 (W.D. Wash. Oct. 6, 2020) (stating that "[c]ourts have consistently rejected . . . generalized arguments as a basis for compassionate release," e.g., challenges to BOP medical staffing and lack of adequate testing).

medical problems; and (3) that, as a result of defendant's mandatory life sentence, "relevant mitigation factors were not fully developed or presented at sentencing." Dkt. # 1083 at 2–9. The Court addresses each of these rationales in turn and ultimately concludes that defendant fails to establish extraordinary and compelling circumstances.

### 1.     COVID-19 Risk

The Court need not reiterate the widely known information regarding the symptoms of COVID-19 and the devastating global impact of the virus. COVID-19 has created unprecedented challenges for federal prisons, where inmate populations are large and close contact between inmates is unavoidable. As of September 28, 2021, the BOP reports 484 federal inmates and 501 BOP staff have active, confirmed positive COVID-19 test results. See COVID-19 Coronavirus, Fed. Bureau of Prisons, https://www.bop.gov/coronavirus/ (last visited Sept. 28, 2021). Since the BOP reported its first case in late March 2020, at least 258 federal inmates and six BOP staff members have died from the virus. Id. USP Lompoc currently reports zero inmates and three BOP staff members with active, positive COVID-19 test results. Id. BOP has classified 172 inmates and 61 staff members at USP Lompoc as having "recovered" from the virus and two inmates as having died from it. Id. Approximately 72% of the inmate population at the Federal Correctional Complex in Lompoc (FCC Lompoc) is now vaccinated. See id. (reflecting that 1,488 inmates are vaccinated at FCC Lompoc, which comprises FCI Lompoc and USP Lompoc); USP Lompoc, Fed. Bureau of Prisons, https://www.bop.gov/locations/institutions/lom/ (last visited Sept. 28, 2021) (reflecting a population of 1,358 total inmates at USP Lompoc); FCI Lompoc, Fed. Bureau of Prisons, https://www.bop.gov/locations/institutions/lof/ (last visited Sept. 28, 2021) (reflecting a population of 710 total inmates at FCI Lompoc).

Defendant points to his diabetes, obesity, high blood pressure, high cholesterol, and asthma as underlying conditions that "exponentially increase the risk of serious complications or death should" he contract COVID-19. Dkt. # 1083 at 8–9. The CDC has identified diabetes, obesity, hypertension, and asthma (if it is moderate to severe) as conditions that can make a person more likely to get severely ill from COVID-19. See People with Certain Medical

ORDER DENYING DEFENDANT'S MOTION
FOR COMPASSIONATE RELEASE - 7

Conditions, CDC (Aug. 20, 2021), https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last visited Sept. 28, 2021). The government has presented evidence related to defendant's access to COVID-19 vaccination, however, that undercuts defendant's argument. Defendant was offered the Moderna COVID-19 vaccine in March 2021, and he refused it. Dkt. # 1087 at 4. The overwhelming scientific consensus is that vaccination is a safe and effective way to avoid contracting the virus. Key Things to Know About COVID-19 Vaccines, CDC (Aug. 19, 2021), https://www.cdc.gov/coronavirus/2019-ncov/vaccines/keythingstoknow.html (last visited Sept. 28, 2021). Defendant's attorney's declaration supporting defendant's supplemental brief states that defendant "received no detailed information about the safety of the vaccine" and he "has medical, allergy and religious concerns with taking the vaccine." Dkt. # 1083-1 at 4, ¶ 8. BOP medical records reflect that defendant received counseling advising him to be vaccinated as recently as July 2021, and that "all questions regarding vaccination were answered." Dkt. # 1087 at 2. In response to the government's evidence regarding defendant's access to vaccination, defendant's reply relies upon a second declaration by his attorney. With respect to vaccine concerns, the declaration states as follows:

> Mr. Rollness has had repeated incidents throughout his life with extreme sensitivities and allergic reactions to medications, anesthesia, and vaccines. His recent medical records confirm he has not accepted flu or other vaccines. Exhibit B pp 33-36. He reports allergies to vaccine ingredients including lipids, ether, and acetic acid, and he has experienced problems with tuberculosis skin tests resulting in significant swelling and inflammation deemed a false positive adverse reaction and not an actual infection. Mr. Rollness is allergic to NSAIDS and often experiences reactions or side effects to ingredients in medications.

Dkt. # 1092-1 at 5, ¶ 7. The medical records defendant cites regarding rejecting non-COVID-19 vaccines do not explain the reason for defendants' rejections, and defendant cites no medical records substantiating that he has allergic reactions to vaccines. BOP medical records list "NSAIDs" under defendant's allergies, but not particular vaccines or vaccine ingredients. Dkts. # 1067 at 14, 19, # 1094 at 9. Moreover, other BOP medical records reveal that defendant has

ORDER DENYING DEFENDANT'S MOTION
FOR COMPASSIONATE RELEASE - 8

stated "he does not like to take medicine,"[4] Dkts. # 1094 at 9, # 1067 at 19, and he is "known for a history of noncompliance with medication," Dkt. # 1094 at 14. Given the lack of documentation supporting defendant's alleged vaccine-related allergies, the Court finds defendant's decision to decline the vaccine weighs against compassionate release on the basis of vulnerability to COVID-19. See United States v. Baeza-Vargas, No. CR-10-00448-010-PHX-JAT, 2021 WL 1250349, at *3 (D. Ariz. Apr. 5, 2021) ("Judges of this Court, as well as others around the country, have ruled with consistency that an inmate's denial of a COVID-19 vaccination weighs against a finding of extraordinary and compelling circumstances."). The Court finds that defendant's argument regarding COVID-19 vulnerability does not establish an extraordinary and compelling basis for compassionate release.[5]

### 2. Additional Medical Problems

Defendant argues that he has additional medical problems that warrant compassionate release. In particular, defendant highlights that he has "had difficulty getting access to his inhaler at times during the Pandemic." Dkt. # 1083 at 6. Defendant also remarks that he has chronic pain conditions and that pain management has been a challenge in prison. Id. Although the U.S.S.G. § 1B1.13 policy statement is not binding, Aruda, 993 F.3d at 802, the Court finds it instructive regarding the type of circumstances that would be extraordinary and compelling.

---

[4] Defendant's attorney's declaration also states that defendant "dislikes taking medications." Dkt. # 1083-1 at 4, ¶ 6.

[5] The cases defendant relies upon are distinguishable because they either predate COVID-19 vaccination at BOP facilities or do not analyze facts regarding vaccination. See Dkt. # 1083 at 9; United States v. Morris, No. CR99-0174-JCC, 2020 WL 4344945 (W.D. Wash. June 22, 2020) (predated COVID-19 vaccination in BOP facilities); United States v. Adeyemi, 470 F. Supp. 3d 489 (E.D. Penn. 2020) (same); United States v. Bennett, No. 15-260(10) (PAM/TNL), 2020 WL 3638696 (D. Minn. July 6, 2020) (same); United States v. Black, No. 1:11-cr-00083-TWP-MJD, 2020 WL 4583056 (S.D. Ind. Aug. 10, 2020) (same); United States v. Tables, No. CR18-16 TSZ, 2020 WL 6196389 (W.D. Wash. Sep. 2, 2020); United States v. Carson, No. CR06-5059 RJB, 2021 WL 22588 (W.D. Wash. Jan 4, 2021) (same); United States v. Carter, No. CR15-211 MJP, 2021 U.S. Dist. LEXIS 10680 (W.D. Wash. Jan. 20, 2021) (does not analyze facts regarding vaccination); see also COVID-19 Vaccination Efforts Commended, Fed. Bureau of Prisons (Jan. 16, 2021), https://www.bop.gov/resources/news/20210116_covid_vaccine_efforts_commended.jsp (last visited Sept. 27, 2021) (counting BOP administration of COVID-19 vaccinations from January 15, 2021).

ORDER DENYING DEFENDANT'S MOTION
FOR COMPASSIONATE RELEASE - 9

Under Note 1(A), regarding medical condition of a defendant, extraordinary and compelling circumstances exist where:

    (ii)    The defendant is—

            (I)    suffering from a serious physical or medical condition,

            (II)    suffering from a serious functional or cognitive impairment, or

            (III)    experiencing deteriorating physical or mental health because of the aging process,

that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.

BOP's Medical Duty Status sheet indicates that defendant has no physical limitations or work restrictions. Dkt. # 1067 at 12. Regarding defendant's access to his inhaler, BOP records reflect that after his August 9, 2020 request for medical services, along with defendant's numerous follow-up requests,[6] he was provided with an inhaler on September 4, 2020, Dkt. # 1094 at 2–10. BOP records also reflect that in late February and early March 2021, defendant requested renewal of his inhaler, Dkt. # 1094 at 23–24, and the prescription was renewed. With respect to defendant's chronic pain conditions, in defendant's recent health services encounter this past August, records reflect that his pain behaviors were "much less pronounced" and defendant received "some immediate relief" from the injections he received at that visit. Id. at 30.

---

[6] Any Eighth Amendment arguments defendant may have regarding the conditions of confinement may be properly brought in a habeas petition or a direct civil claim, not a motion for compassionate release. See United States v. Numann, No. 3:16-CR-00065-TMB, 2020 WL 1977117, at *4 (D. Alaska Apr. 24, 2020) (holding that an Eighth Amendment claim "relating to the manner and conditions of confinement—[is] not properly brought in a motion for compassionate release"); United States v. Miller, No. 15-CR-00471-CRB-1, 2021 WL 2711728, at *4 (N.D. Cal. July 1, 2021) (observing that inmates have "alternative avenues to obtain improved medical care"); Torres v. Milusnic, 472 F. Supp. 3d 713, 743–46 (C.D. Cal. 2020) (granting provisional class certification to a subset of FCC Lompoc inmates regarding COVID-19 exposure).

ORDER DENYING DEFENDANT'S MOTION
FOR COMPASSIONATE RELEASE - 10

Additionally, new pain medications were ordered. Id. at 31. Although BOP records reflect that there is often a delay between defendant's request for medical services and treatment, the Court does not find that defendant's medical conditions substantially diminish his ability to provide self-care, nor do they otherwise amount to extraordinary and compelling circumstances.

### 3. Limited Consideration of the Sentencing Factors

Defendant contends that the Court's inability to consider mitigating circumstances at sentencing is another factor establishing extraordinary and compelling reasons. While this factor is relevant to analyzing the § 3553(a) factors, the fact that a mandatory sentence applied at sentencing does not move the needle very far on the extraordinary-and-compelling scale where the sentence is otherwise consistent with current law and many defendants face mandatory sentences at sentencing. Accordingly, the Court finds that defendant has not established that "extraordinary and compelling" cirumstances exist to support his request for compassionate release.

## C. Additional Considerations

Even if the Court were to find that "extraordinary and compelling" circumstances exist here, additional considerations lead the Court to deny defendant's motion. Courts must assess whether a sentence reduction to time served is consistent with the sentencing factors set forth in 18 U.S.C. § 3553(a). See 18 U.S.C. § 3582(c)(1)(A). Relevant factors include: (i) "the nature and circumstances of the offense and the history and characteristics of the defendant"; (ii) the need for the sentence imposed "to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense"; to adequately deter criminal conduct; "to protect the public from further crimes of the defendant"; and "to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner"; (iii) "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct"; (iv) the sentencing guidelines; and (v) "the need to provide restitution to any victims of the offense." 18 U.S.C. § 3553(a); see also United States v. Grimes, No. CR11-5509 BHS, 2021 WL 319404, at

*3 (W.D. Wash. Jan. 26, 2021) (summarizing relevant factors). Here, the Court finds that the sentencing factors weigh against compassionate release.[7]

Defendant makes a variety of arguments regarding the sentencing factors. Defendant remarks that the Court could not have predicted the pandemic or its impact on inmates and their families. Dkt. # 1083 at 10. While it is true that the Court did not predict the pandemic or the subsequent hardship arising from it, the sentencing factors still cut against release. The nature and circumstances of defendant's crime were extremely serious. Defendant committed nine acts of racketeering, including the murder of Michael Walsh, the robbery of Leonard Sellig, extortion, and interstate transport of stolen motorcycles. PSR ¶¶ 19–25. Defendant was found guilty of several other offenses based on the same conduct, including violent crime in aid of

---

[7] The Court finds the cases relied upon by defendant unpersuasive and distinguishable. See Dkt. # 1083 at 11. For example, in United States v. Bass, 514 F. Supp. 3d 977, 983–85 (E.D. Mich. 2021), defendant "was reared in abject poverty," had experienced "unaddressed household trauma," had become a life coach during incarceration after earning a full tuition scholarship with the "glowing recommendation of his instructors." Moreover, the letters to the Court on Bass's behalf detailed Bass's remorse, ownership, and growth, id. at 985, whereas many of the letters on defendant's behalf focus not on defendant's remorse or accountability, but rather contend that defendant was wrongfully convicted. See, e.g., Dkt. # 1067 at 45–48, 53–54, 55–61, 62–67. Where the reason for the requested relief is an alleged wrongful conviction, a compassionate release motion is not the appropriate vehicle. Defendant's other cases fare no better. See United States v. Huggans, No. 4:07 CR 541 CDP (E.D. Mo. June 11, 2021) (involving a mandatory life sentence for a non-violent drug offense due to a sentencing enhancement that would not be applied today); United States v. Russell, No. 3:05-CR-00257-SLB-HNJ-10, 2021 WL 1597927, at *8, *10 (N.D. Ala. Apr. 23, 2021) (same); United States v. Lopez, No. 97-01117 ACK-2, 2020 WL 6298061, at *7 (D. Haw. Oct. 27, 2020) (regarding a defendant who was only 18 at the time of the offense with no prior criminal record, with "extraordinary rehabilitation," and who will be deported to Mexico upon release); United States v. Duncan, 478 F. Supp. 3d 669, 679–83 (M.D. Tenn. 2020) (involving a mandatory life sentence for non-violent drug and firearm offenses, where defendant had extremely low IQ, medical conditions resulting from brain hemorrhage at birth, and where sentencing judge commented that the mandatory sentence was too high); United States v. Hope, No. 90-CR-06108-KMW-2, 2020 WL 2477523, at *1, *4 (S.D. Fla. Apr. 10, 2020) (involving a mandatory life sentence for non-violent drug and firearm offenses due to a sentencing enhancement that would not be applied today, where defendant had already served almost thirty years, the mandatory life sentence he received would not be imposed today, and he required surgery).

racketeering for the murder of Michael Walsh. PSR ¶ 26. According to the Presentence Report, "[s]ome indicia of premeditation appears to exist in this case—the victim was 'lured'" to the party where he was murdered, and he "was isolated behind the garage and a guard was posted." PSR ¶ 42. The Presentence Report goes on to state that the offense "appears to have occurred in an effort to support and bolster, what the jury found to be a 'criminal enterprise[,]' the Hells Angels and their reputation." Id. Moreover, the Court had the benefit of presiding over defendant's trial, and based on the evidence it heard, the Court is convinced beyond a reasonable doubt that the murder of Michael Walsh was a premeditated killing. Defendant's failure to accept the jury's verdict, see Dkt. # 1066 at 10 ("Extraordinary and Compelling circumstances Mr. Rollness believes [sic] would also be regarding his actual innocence, regardless of the outcome of his trial . . ."), and the Court's own determination of guilt, are evidence that defendant remains a danger to the community. In spite of the pandemic-related hardships faced by defendant and the impact on his family, the nature and circumstances of this offense and the need for the sentence to reflect the seriousness of the offense, promote respect for the law, provide just punishment, afford adequate deterrence, and protect the public from further crimes, all disfavor granting compassionate release here.

It is clear from defendant's many letters of support that he is beloved by his family and friends, see Dkt. # 1067 at 40–85, and the Court sympathizes with their desire to have defendant released. During the course of defendant's trial, the Court was impressed by the Rollness family's support of defendant and the dignity of Mrs. Rollness and her children in the courtroom. Defendant's family is paying a steep price for defendant's wrongdoing, for which they bear no responsibility. Defendant never should have put his family through the anguish they have experienced, and will continue to experience—just as he never should have put the family of Michael Walsh through the lifetime of horror they are enduring. See Dkt. # 1085-1 at 2–5 (letters by several of Michael Walsh's family members voicing their fervent opposition to any reduction in defendant's sentence).

Defendant argues that he has served more time than any of his co-defendants, Dkt. # 1083 at 12, but none of his co-defendants were convicted of VICAR murder. PSR ¶¶ 8–11.

Defendant also highlights that he has engaged in prosocial activities with, he claims, "no history of violence while serving his sentence." Dkt. # 1083 at 12. Admittedly, defendant has engaged in an impressive number of education courses representing more than 2,400 hours of time. See Dkt. # 1067 at 22–23. Additionally, defendant's disciplinary history during incarceration is fairly limited, but defendant's 2020 infraction for refusing a urinary analysis is concerning, as is his 2009 infraction for fighting, which would seem to contradict his assertion that he has served his sentence with no violence. Dkt. # 1085-2 at 2–4. Given that this Court presided over defendant's trial, the Court heard the witnesses testify about defendant's many acts of violence, threats of violence, and intimidation. See, e.g., Dkt. # 1085 at 14–15 (government summarizing witness testimony). And the Court remains concerned about the danger defendant presents and the need to protect the public from that danger. Accordingly, the Court finds that granting compassionate release would not be consistent with the sentencing factors set forward in § 3553(a). The Court therefore DENIES defendant's motion for compassionate release.

## IV.   CONCLUSION

For all the foregoing reasons, defendant's motion for compassionate release (Dkt. # 1066) is DENIED. The parties' respective motions to seal (Dkts. # 1086, # 1093) are GRANTED, as is the government's motion for leave to file an over-length brief (Dkt. # 1084).

IT IS SO ORDERED.

DATED this 30th day of September, 2021.

*[signature]*
Robert S. Lasnik
United States District Judge

ORDER DENYING DEFENDANT'S MOTION
FOR COMPASSIONATE RELEASE - 14